Please be seated. Our second and final case for today, 25-1258 Piedra v. Attorney General Bondi. Mr. Winograd, good to see you again, whenever you're ready. Likewise, Your Honor. Thank you, and may it please the Court. The Board of Immigration Appeals held in this case that a guilty plea my client entered in 2006 qualifies as a conviction even though that plea was vacated and the charge against her was dismissed. That conclusion must be reversed under the Supreme Court's intervening decision in Hewitt, which held that Congress legislates against the presumption that criminal defendants whose convictions are vacated are deemed not to have been convicted in the first place. What matters under Hewitt is not why a conviction was vacated, but simply whether it was vacated, and my client's conviction was indisputably vacated given that her case was restored to the trial docket and the case against her was dismissed. Can I ask you about that? That seems like a broader argument than the one that was made below. It seemed like the – were you the lawyer below? I was not, Your Honor. Okay. It seemed like the counsel below sort of accepted this premise that there's a distinction between a vacater for merits-related issues and a vacater for rehabilitative purposes. So why would we consider this broader argument? Sure. Exhaustion does not apply here for three reasons. First, the board was powerless to overrule matter of Pickering because the attorney general adopted the same distinction in matter of Thomas and Thompson, and the board, of course, cannot overrule the attorney general. Second, even assuming that the board could overrule matter of Pickering – So that's a futility argument? That's a futility argument, but even if the court doesn't accept that argument, the Supreme Court held in Santos-Zacharia – well, the statute only requires exhaustion for remedies that are available as of right. And the Supreme Court held in Santos-Zacharia that the phrase as of right refers to review that is guaranteed as distinct from discretionary or contingent on discretion. So like this court, the only way the board can overrule its precedent is to go en banc and for a majority of the full board to overrule its precedent. And just as this court is not obligated to consider a petition for rehearing en banc, the board is not required to consider a request to overrule its own precedent. So just as litigants do not have to exhaust a claim that this court must overrule its precedent before challenging that precedent before the Supreme Court, non-citizens at the board do not need to ask the board to overrule its precedent before challenging that precedent before this court. Boy, that's a mouthful. Well, I think that's what follows from Santos-Zacharia. Santos-Zacharia said exhaustion is limited to remedies that are available as of right. And there is no right to have the board reconsider its own precedent just as there is no right to have this court reconsider its own precedent. And even if exhaustion would have been a problem beforehand, before Hewitt, exhaustion does not require parties to foresee arguments that are based on future Supreme Court decisions. So we think Hewitt not only requires a ruling in our favor on the merits, but overcomes any exhaustion problems that would have existed beforehand. I'm sure you have a plan B if that doesn't work. Between Santos-Zacharia, it's very clear that exhaustion is only available for remedies that are available as of right. There is no right before the board for the board to go en banc just as there is no, you know, there's no right to have this court go en banc. I just find the two analogous. Now, and of course, this court, you know, cannot disregard what the Supreme Court said in Hewitt, which, as I said, was that there is Congress legislates against the presumption that vacated convictions are void ad venitio. So maybe, and I'm not suggesting this is where I am, but let's say I disagree with you on that broader principle. We can still rule in your client's favor if we simply look at the nature of the vacater in this case and say that on its face, it doesn't appear to be a vacater based on a rehabilitative purpose, right? Certainly, Your Honor, even if we assume that matter of pickering was correctly decided, the vacater in this case does satisfy the board's own test. And does it matter that there seems to be a mismatch between the statute that was relied on, the North Carolina statute, which seems to talk about newly discovered evidence and the basis for the relief requested? It would seem to suggest either ineffective assistance of counsel or the lack of a voluntariness when it comes to the plea, because Mr. Pietra wasn't aware of the immigration consequences of pleading guilty. We don't think it matters because at bottom, the government's argument is that my point... Wait, why? It doesn't matter that you don't satisfy any of the statutory bases for the vacater, except for, I mean, the only one that you plausibly satisfy, because the ineffective assistance of counsel is not retroactive. So that doesn't qualify. The only one that you qualify for is like manifest injustice. And it seems to me that the only manifest injustice that was presented was the immigration consequences, which might well be manifest injustice, but at least under pickering doesn't seem to help you. Well, help me understand why you think it doesn't matter that the statute doesn't permit what you actually got, except for this manifest injustice piece? The ultimate question is not whether it should have been granted under North Carolina law. What the government is effectively trying to do is collaterally attack the court's decision to... I don't take it that at all, right? Like one of the options available under the statute is manifest injustice, and that's not defined, but could certainly include immigration consequences. But it seems like pickering, which is the only thing that is plausibly available at that point, it certainly doesn't include things like non-retroactive Supreme Court cases, because that would read out a whole section of the statute. And so it seems to me most plainly that the court was entitled to do this. I'm not suggesting that you're collaterally attacking the state for doing it, but that the state did it for the purpose of removing the manifestly unjust immigration consequences, which it's entitled to do. I'm not... this isn't a critique of the state. The state has every authority to do that. The question is, if we're applying this pickering test, bracket that for a minute, but if we're applying it, it seems to me like fairly straightforward that it falls on the wrong side of that test. Help me understand. The statutory provision under which the conviction was vacated was 15A-1415C. That wasn't the manifest injustice provision. That is provision that requires new evidence having direct or material bearing on the defendant's guilt or innocence. Now, the government doesn't dispute that... So I take that's got to be like a Scribner's error, because there was no new evidence that was presented. That can't possibly been the basis on which the court acted. If the court looks at page 85 of the joint appendix, the caption of the motion says, a motion for appropriate relief pursuant to North Carolina General Statute 15A-1415C. No, no, that's the motion. But the court's order does not do that, does not rely on that subsection, right, does not identify this. I mean, maybe I'm reading it wrong, right? But I'm on 86, and I see... Am I missing something? Like... It doesn't cite any statute. I understand that you claim that it was new evidence, but anybody looking at a claim of new evidence given the motion that you made would be like, well, that doesn't work. But what might work is something else, right? And so I take the court's order here to sort of effectively acknowledge that the argument being made is frivolous, in my view. But that doesn't mean that it wasn't allowed to do this. It just had to do it on a basis that wasn't frivolous. What the order says is, pursuant to the defendant's motion for appropriate relief, pursuant to the motion, and the only statute cited in the motion is subsection C, which in turn requires the presentation of new evidence. And in your view, if that had been the basis for the relief, no matter how frivolous, we shouldn't look behind that. Yes. By analogy, just as a non-citizen cannot collaterally challenge a criminal conviction in removal proceedings on grounds that he was wrongly convicted, nor can the government collaterally challenge a vacater of a conviction on grounds that it was wrongly granted. It's simply a matter of what's good for the goose. So I'll acknowledge that that makes a ton of sense, but that is the argument that Pickering is flat wrong. And I'm open, very open to that argument. But if we say we're going to apply Pickering, Pickering seems like defined by the idea that it's looking at the underlying reasoning. And when we go to the underlying reasoning, we're not undermining it, right? We're not collaterally attacking it, right? It seems like to me what the government's argument here is, is that this was a perfectly lawful state vacater, right? They're not saying that it's an unlawful state vacater. They're just saying that it's a state vacater that is based on a reason. It has to be based on a reason that doesn't qualify under Pickering, right? That is the manifestly unjust immigration consequences. All right. Like that's not saying, that's not collaterally attacking. That's trying to identify what is the reason underlying the vacater. And Pickering seems to require us to do that. Now, how you get that out of the statute, I have no idea. But like that's what Pickering tells us to do, no? Like what am I missing here? It's not a collateral attack on the order. It's an attempt to identify what is the reason behind the vacater. And your argument is, well, that's crazy, right? OK, but take that up with Pickering, right? So we're not saying, it's not a collateral attack on the vacater. It's an attempt to identify what is the basis for the vacater. And that's what Pickering tells us to do. I mean, I acknowledge your argument is a very persuasive one, that that doesn't make any darn sense. But if we're going to apply Pickering, I don't know what we're doing, but looking at what the reason is. Sure. The last thing I'll say is, I think even under Pickering, you look at the statute under which the vacater was granted, and you look at the order. And I don't think you look beyond that. There's, I mean, we're not going to be- But the order doesn't identify the statute. I understand you have this argument that we should imply that it adopted this frivolous argument. But I don't think the order requires us to do that. It seems like to me, the order just says I'm vacating, right? And so we look at what is a plausible basis for that happening. And if there were multiple, maybe you get the benefit of the doubt. But it seems like to me, there's only one plausible argument, and that's the manifestly unjust immigration- I think it could also be ineffective assistance, even though PDA doesn't reply retroactively, because parties can waive arguments against retroactivity. And here the government, the North Carolina prosecutor, did not object to the motion. Sorry, I see that Judge Keenan has a question. I'm sorry, Judge. Yeah. No, I'm sorry. I wanted to get the right time to ask. I didn't mean to cut across anybody. So if you're still answering- No, by all means. Okay. It seems to me, Mr. Winograd, that the only basis that you could possibly fit into the Pickering framework would be the voluntariness of the plea, because that would be a substantive or procedural, however you want to define it, defect in the conviction. Okay? Yes. But in order for us to find that, wouldn't we be looking behind the state order to try to figure out why it happened? In other words, nothing in the motion of the petitioner suggests that the plea was involuntary, at least under the laws that then existed, and nothing in the court's order indicates that the plea was not voluntary. So you've got a very sympathetic case, but how do you get there without asking us to try to figure out why the court did this? Well, the board has recognized, and certainly the Ninth Circuit recognized in Bent, that whether a non-citizen understands the immigration consequence of a plea does go to the voluntariness of the plea. And of course, the order in this case did refer to the fact that my client did not understand the consequences of the plea. The motion did. Had the Supreme Court recognized the problem, in other words, the failure to notify the immigration consequences at the time this motion was made? I don't believe the Supreme Court itself has recognized that, but I believe the board and circuit courts have. With my remaining time left, if I could return just to our challenge to matter of pickering in the event that the court finds that it doesn't need to be exhausted under Santos-Zacharia, there is nothing in the statutory definition of conviction that supports the distinction that the board drew in matter of pickering. Regardless of why a conviction was vacated, a vacated conviction is still a vacated conviction. And this distinction may make sense from a policy standpoint. It is completely divorced from the actual text of the statute. And it's telling that the government...  Do you agree that there's like a plausible, maybe not a good one, but there's a plausible argument that any vacated conviction counts or that no vacated conviction counts. You could, at least in theory, get those two answers out of the statute. Yes. But what you can't do is get pickering, which is like a mishmash of nothing. Right. This is a baby that cannot be split. And I think the first option that all vacated convictions count, even the government disclaims that because it would mean a conviction vacated due to actual innocence would still count for immigration purposes. And it would border on the absurd to think that Congress intended that, especially in light of the presumption it recognized in Hewitt. Now, I would note, though, that another problem with the government's argument is that it just simply has not explained what its position would be if prosecutors had elected to retry my client on the charge to which she pleaded guilty. So if my client was found guilty after a retrial, would the government say that she has two convictions for the same offense? If she was acquitted, would it then say... It doesn't matter whether she has two. The question is just, was she convicted? I don't think that... Can I ask a slightly different question? Sorry. Just by all means. So except hypothetically for a minute that I think Hewitt is not sufficiently on point to be irreconcilable with our decision in Fan, which applies Pickering. And so assume for a minute that the only case that I'm looking at to determine whether Fan remains binding on me is Loper Bright. Can you just give me, in that context, which is slightly divorced from your briefing, how you think in light of Chavez and Ozarumba and all the other cases that have tried to figure this question out, how this court ought to approach a case like Fan that is obviously methodologically irreconcilable with Loper Bright. And yet, in cases like Chavez, we say that the result of that isn't wiped away, but that Loper Bright's still there. What is the test that you would have us apply post Chavez and Ozarumba to Fan if the only case that I had that mattered is Loper Bright?  Ozarumba specifically leaves open the question. So as a matter of fact- But whether Chavez left it open, like Ozarumba doesn't answer the question if Chavez closed the door, we're bound by Chavez, as the earlier panel. But put that aside for a minute. Assume it's an open question. Well, with the time I no longer have. The Chief will let you answer this one. Absolutely, go ahead. I could not say it any better than Judge Bumate said it in his dissent from denial of rehearing in the Ninth Circuit decision in Lopez versus Bondi. I don't know if your honors are familiar with that. You said it in a reply brief, but I just don't, this is an issue that has divided the circus at the wake of Loper Bright, and I have not seen any, even an attempt to answer the arguments that Judge Bumate makes in his dissent in that case. And it would simply turn vertical stare decisis on its head to say that circuit courts are required to continue applying their pre-Chevron jurisprudence even when the Supreme Court said that Chevron itself was wrongly decided. So can I, do you mind Chief? So take a hypothetical for a minute to say why maybe that doesn't make perfect sense. If we had a case like Fan and we had this type of circumstance, it might well be that Loper Bright creates a conflict, right, in methodology. But if Fan happened to reach the best statutory reading, even though it did so in applying Chevron, there wouldn't be any irreconcilable conflict, and we would continue to apply Fan, right, if it applied the best statutory reading. Correct, but I don't read Fan as saying, this is the best statutory reading. No, no, I know, this is hypothetical. Okay. Yeah, it's a hypothetical Fan. It's not Fan itself. Understood. But that means that we're not just throwing away all of our Chevron cases, right? We're having to ask whether Loper Bright is creating an irreconcilable conflict with that. And mere methodological differences isn't sufficient, right? That's, the Supreme Court suggests that. It seems like to me that's clear from Chavez that methodological differences aren't sufficient. But what we don't sort of answer, like what seems to be open is, what is that test? And it seems like in other contexts, we've applied this idea of like an irreconcilable conflict or severely undermine the result, not just the methodology. We only think that cases are irreconcilable with Loper Bright to the extent that they reach the result that they did only because of Chevron deference. Right. If Chevron was the driving force. So they're at step, not step one. Step two. They're step two and they're reaching a result where they say it is a reasonable, even though effectively, we would now say it's not the best reading. Correct. If it's clear from the opinion that the court was not exercising its independent judgment, then we would say that the question remains open in light of Loper Bright. Okay. And what do you say Fan, where does Fan fit in that analysis? We think Fan and the government says in their brief that they deferred to the board under a matter of Pickering. So we read that as a Chevron case. There was a separate part of the opinion, part three, that did go into statutory interpretation. But again, our baseline is that Fan is distinguishable because it did not squarely address the effect of a true vacater. But it adopted Pickering as the interpretation of this statute. It adopted it by deference to the board and at the time, overwhelming support in the other circuit. Sure. I mean, that's our frontline position. If the court doesn't accept it, then our next position is it's irreconcilable with Loper Bright and then- And Hewitt. And Hewitt. Right. And I've bracketed Hewitt for a minute, but you would put Hewitt back into that conversation. Yes, I think the conflict is most irreconcilable with Hewitt itself. If you think of it this way, if Hewitt had been decided before Fan, would Fan have said what it said with regard to pure vacaters? I don't see how it could have said that. I think we have, to be clear, we have no quarrel with the outcome of Fan with respect to the specific statute at issue in that case. Because that was a set-aside. I appreciate that since I wrote Fan. We're all aware of that. We're trying to be as nice as we can. The outcome of Fan, we think, was correct because, as the DC Court of Appeals has said, a set-aside is distinct from a vacater or reversal because it does not alter the fact of conviction. So again, we have no quarrel with the outcome of Fan. We just don't think Fan can be reconciled with Hewitt to the extent it can be read to also apply to true vacaters, as occurred in this case. I want to ask Judge Keenan if she has any additional questions of you. No. I do have one other in light of the question she asked you about the hurdle you have to face with respect to the voluntariness of the plea. I want to be sure I understand your argument is that, with respect to the state court, even if they got the law completely wrong, if the claim was that I didn't understand the immigration consequences of my plea and all of that might have been foreclosed either by collateral consequences or some other prohibition on getting to that point, if the state court had granted the motion on that basis or the basis of newly discovered evidence, even in the face of no such evidence, we shouldn't look behind that. Precisely. I think the court has to take the order as it finds it, just as it takes judgments of conviction as they find them, even if you were to read the plea colloquy and it was overwhelmingly clear that what the defendant did did not satisfy the elements of the offense. If a litigant tried to present that argument to the board or to this court, they would say, tough luck. Go file a motion for post-conviction relief in North Carolina court. But you agree you bear the burden on this. By preponderance of the evidence. And if we read the order on its face, it actually doesn't tell us why it's doing it. We have to, even under your view, we have to go behind the order and suggest that, well, it must have relied on the grounds given in the motion. Or maybe something like, for you to meet your burden, you have to go beyond the order. Yes, I think the order in conjunction with the motion. That's part of the problem with pickering, right? Is that it requires courts, federal courts, to identify or figure out what a state court vacater is. And accepting perhaps that the chief's point may well hold, if the state court's order on its face is clear about what it's doing, that we might or might not want to look behind it in that circumstance. But where it is not clear on its face, the only way you can meet your burden under pickering is to go beyond the face of the order. And I agree, your argument is, I don't have to go very far behind, right? But you're still going outside of the four corners of the order itself. I suppose that is correct, yes. All right, thank you very much. Thank you, your honors. Mr. Needle, welcome. Thank you. Good morning, your honors. May it please the court, Jonathan Needle, Department of Justice, on behalf of the respondent. This case illustrates very well why matter of pickering exists. The state court documents that the petitioner submitted to the board really tell us nothing about why her conviction was vacated. What we do know is that she waited about 15 years after the conviction was entered to challenge it before the North Carolina court. And she brought that challenge only after the immigration judge found that she was ineligible for relief because of that conviction. Not only that, but she followed... All right, so those are... I know I should wait longer to let you keep talking, but you start off by saying this is why pickering is there. And I will grant you that pickering seems like a really great idea. Help me understand when I look at the statutes, how in the possible world I can get pickering out of the statute. I understand how I can get no vacated convictions count, which is what your colleague is asking, or I can understand how you can say all vacated convictions count, right? That seems like a hard argument, but it's at least a plausible one. What I can't possibly figure out is how I look at 1182, 1101, and draw this like middle ground. It depends upon what was between the ears of some state court judge when they vacated the order. Like that line to me is like, frankly, does not make a lot of sense. Can you help me understand how I might get pickering from the statutory language? Well, starting with the statutory language, the INA provides that a conviction is a formal judgment of guilt entered by a court. And that in and of itself indicates that Congress's intent to give some effect to the historical fact of the conviction. Okay, which, all right, totally fair. And so in that world, we might say, doesn't matter if it's vacated or not. I certainly understand they could have intended, or I would say conveyed with the words they use, that the historical fact controls. And so whether it's vacated or not doesn't matter. I understand that argument, and we can talk about the other one. But help me understand how I take that and get an answer that suggests that what matters is what was between the ears of a state judge in granting the vacater. Well, I think it's important to emphasize that a definition of conviction did not exist before 1996 when Congress enacted that provision. And as a result, there was no uniform definition for the agency to apply. And the purpose was to enact this uniform definition that it's not dependent on what a state court orders because the board had previously recognized in matter of Oscok that- But it obviously depends on what a state court does because it has to be entered by a court, right? At a bare minimum, right? It's a question of what was entered by the court. What is the formal adjudication of guilt entered by the court? Yeah, that's correct. But the board has traditionally recognized state court procedures for setting aside, vacating, expunging, annulling a conviction. That body of law developed over the course of decades and the agency found that it led to unfair results. It was confusing. And this was in the matter of Oscok case, which Congress referenced in the legislative history for the 1996 amendment. And again, it made clear its desire to impose a uniform definition of conviction that did not depend exclusively on the fact that a conviction was vacated or otherwise set aside. So this question might- Okay, Mr. Needle- Oh, go ahead, Judge Keenan, go ahead. I'm sorry. No, go ahead, please. Okay, Mr. Needle, could you address, excuse me, what I see to be your Hewitt problem? The Hewitt language is very explicit. The court said vacated orders are void ab initio and thus lack any prospective legal effect. And why doesn't that end the inquiry here? You're correct, Your Honor. Hewitt contains a very bold statement about vacators. However, it should be emphasized that Hewitt has nothing to do with the INA. It has nothing to do with immigration. But why shouldn't it apply? The court didn't cabin its language, which it frequently does. And it's very careful not to overextend. It's very careful not to just simply toss a bomb. And it seems to me that in saying specifically that these orders lack any prospective legal effect once they're vacated, why wouldn't that apply in immigration? Just because it wasn't an immigration case, it appears that the language is just so broad that the court is drawing a line. It's a line in the sand. And for whatever reason, it's decided to draw it. I think the case is distinguishable in that it arose in the context of the First Step Act. It involved a federal sentence that was vacated by a federal court pursuant to a U.S. Supreme Court decision. Sure, it was different, absolutely. But I'm talking about the language. The language is broad. The court doesn't say in the context of the First Step Act when you have a remedy enacted by Congress and the court is being asked to consider what has happened before the remedy is sought. The court didn't qualify its language. It just got right out there in front and said these don't have any prospective effect. Seems like the court was saying to me, and then if you could respond, the court was saying, we don't want to get into this line splitting here, trying to jump through hoops, trying to define what any judge might've been thinking at an earlier date. It's essentially saying it wipes the slate clean. So why doesn't it apply in this case? Other than the fact it was a First Step Act case, no question, the facts of the case were different. But I'm talking about the principle of law that was so broadly enunciated. Well, the court made much of the fact that in construing the relevant statutory language that it was written in the present perfect tense where the statute said that reduced penalties under the act apply only if a sentence has not been imposed as of the date of its enactment. And the court construed that language as being forward looking and being a basis on which the defendants could be granted relief. So is your argument that when the court says there's no prospective effect, that mattered because of the present perfect tense that at least there, they were asking about this prospective effect. And it contrasts in footnote six with the 922G statute, right, which didn't have that language. And the court sort of acknowledges even a subsequently vacated conviction can form the basis of a 922G conviction. And so it's not that it has no effect, right? It's not really void ab initio, but it just doesn't have this prospective effect, which is the present perfect tense. Correct, and the majority opinion suggested that if the statute was written in the past tense, then the outcome may have been different. And it's important to emphasize here that the provision of the INA that we're dealing with, the definition of conviction, is written in the past tense, a formal judgment of guilt entered by a court. So entered in that sentence though is not actually a past tense verb, right? It's not actually describing the judgment, right? So it's not, you can't write that in the present tense, right? Because it is not a verb. It's not saying the court entered a judgment. It's describing the nature of the judgment, right? Is one that was entered by a court. So it's not a past tense verb at all, right? It's a description of the term judgment. So it's not actually in past tense, is it? I'm not sure. I think it could be written in the present perfect tense. Conviction has been entered. Whether that is a distinction without a difference is something that would require some additional thought and reflection. But I mean, it's clear. Okay, counsel, well, I'm sorry, were you finished? No, Your Honor, you can go ahead. Okay, let's get back to that North Carolina statute. Were there any other statutes under which relief could have been granted in North Carolina to reach the result that was reached in this case? I'm not aware of any statutes based on the asserted justification in the petitioner's motion where she would be entitled to relief under a different provision of North Carolina law. But also, it's not, you know, the agency... I'm asking you a more specific question. Do you, were there any other statutes? And you're saying you don't know? Or is the answer no, there weren't any other statutes under which she could have obtained the relief that she was seeking? There's certainly a statute in case law under North Carolina law for ineffective assistance of counsel claims. But the motion that she submitted gave no indication that that's what she was asserting. So were there any other statutes in North Carolina under which she could have gotten this relief on the basis that she requested it? In other words, I want to make sure that we're looking at the only form of relief that was available to her. Was it yes, that it was the only form of relief, or was it no? I am not in a position to give a definitive answer to that question. But I think here it's important to emphasize the posture of this case before the board, where the petitioner had already been ordered removed. She was filing a motion to remand with the board to send the case back on account of this intervening development. And that meant, as this court has repeatedly recognized, that she has a heavy burden to demonstrate that she is entitled to a remand. This is a factual question. She could have submitted virtually anything to support her motion. But she chose to submit documentation that the board found wasn't clear as to the basis for the vacator. And we submit that this is a determination that's reviewed for abuse of discretion. Looking at the record as a whole, which the board analyzed closely in its decision, the ultimate determination that the conviction survived for immigration purposes was reasonable. This is not a legal question. Let's get back to the standard of review, though, Mr. Needle. Why isn't this a fundamentally legal question here? The effect of the statute, the applicability of Pickering, the applicability of Fon. Aren't we confronted here with a legal issue rather than a factual issue that would implicate the court's discretion? It seems to me that, you know, we've got the Gonzalez versus Garland case in 2021. We pretty clearly said that if it's a legal issue, the court in this procedural posture considers the legal issue de novo. So why wouldn't this be de novo? There certainly are legal issues. They primarily relate to the petitioner's challenge to Pickering and challenge to the agency's interpretation of the INA. And to going behind a court order, whether we can go behind the state court order. Well, that's correct. But the primary issue here is whether the board reasonably determined that there was an ambiguity, that the board could not discern what the basis for the motion or the vacator was. So just in sort of order of operations to understand the arguments you're making, whether FAN is good law and whether the Pickering test applies, that's a legal question re-reviewed de novo. Correct. Well, yes, correct. If Pickering applies, how Pickering was applied, you know, as a factual matter, the facts underlying Pickering by the board, that's an abuse of discretion slash substantial evidence. But that's sort of downstream of the question of whether Pickering itself applies. Correct. Their interpretation of the order, right, that may well be substantial evidence. But whether Pickering applies is a de novo question. Correct. And we point to the FAN decision as stare decisis. FAN cites two, no fewer than five circuit court decisions upholding the Pickering distinction according to Chevron deference. And, you know, even though Chevron has been... Can you, since you bring up Chevron, can you answer the question that I asked your good colleague? If for a minute, just assume Hewitt doesn't exist or that it's not sufficiently clear to require us to abandon FAN, what would you have us do as applying Lope or Bright to FAN as prior precedent? Right, FAN obviously methodologically is inconsistent with Lope or Bright. And yet, you know, the Supreme Court seems to suggest that methodological challenge isn't sufficient to throw the result of FAN away. What would you have us do? Well, I think there's some relevant language in the Chavez case, which was mentioned earlier, where the court said that Lope or Bright may have instructed us to review agency interpretation with a keener eye. It didn't write off respect for settled, consistent, and persuasive precedents. And that's what we have here. We have a body of law that has existed for decades acknowledging the Pickering distinction. So go back to the persuasive question. This is sort of back to the question I started with, which is like, it seems like at a bare minimum, you have to be able to make a plausible argument that Pickering comes out of the statute that you're interpreting, right? I mean, maybe it doesn't have to be the best reading of the statute. But part of the challenge that I have here is I don't even understand like a plausible argument that the statute requires trying to divine what was between the ears of a state court judge when they vacated the judgment, as opposed to asking whether it was vacated or not. Like that I get from the statute. But the sort of underlying reasoning behind the state court judge and how we might try to figure that out seems to me to be a wholly unpersuasive endeavor. And I guess I'll just give you one more time to sort of help me understand how I get Pickering out of 1182 and 1101. Well, again, Congress expressed its intent to give some effect to state court modifications of a conviction. That is consistent with the board's practice over decades. And Congress legislated based on that history. And Pickering acknowledged that and developed a test to ensure that the principles of federalism that are embodied in the INA are applied, where the government is- like doctrine we could have. And it requires us to divine the underlying intent of state court judges in issuing the orders that they issue. I mean, that seems like a wild thing for us to be doing. Well, I mean, I don't want to make the petitioner's argument for him. I would- You're an officer of the court. You get to tell us what you really think, whether it helps your client or not, right? Correct. And there are courts that have found that the plain language of the conviction statute does not explicitly exclude vacators. I think that's a minority view. It may have been- I'm aware of a Fifth Circuit case that may have been overruled. But like I said, that's an outlier. And I would imagine that the government defended that position before the Fifth Circuit when it came up. Can I take you back to the application of pickering? And I know that remains an open question, apparently. And I guess we'll think about that. But assuming pickering is what we should be applying here and going back to the state court documents. And I realize that this is not what's in the record. But let's assume that the motion had been filed pursuant to the statute that was actually identified in the motion. And there was no mention of this collateral consequence issue. It was simply a request for relief based on newly discovered evidence, plain bones motion, no description of what that newly discovered evidence should have been. And the court, state district court, grants relief based on that motion. Again, with no description of what the newly discovered evidence should be. Would we look behind that order? I think in this context, it would be the petitioner's burden to provide sufficient evidence. Well, but on the face of the documents, the relief was granted based on newly discovered evidence pursuant to the terms of the statute. What more do we need? Well, I think Pickering and other case law establishes that the government or the agency has to independently scrutinize the basis for the vacator in order to determine whether it was based on a substantive or procedural defect. And- So then Mr. Needle, essentially you're saying that in order to meet her burden of proof, or in order for a petitioner in similar circumstances to meet the burden of proof, that have to go behind the court order. It seems to me that it's a tough proposition because we've said time and again, we're not going to look behind the order. The order speaks. And now you seem to be telling us that in order to meet her proof burden, the petitioner has to prove evidence beyond the face of the court order. Is that correct? I don't think that the petitioner has to submit the additional evidence, but she does have the opportunity to do that, to present extrinsic evidence in the form of conviction records, declarations, court transcripts, in order to illuminate the basis for the decision. In your view, would that be necessary if you had a court order that was clear, that said in the chief's hypothetical, I'm granting under subsection C, because of the existence of newly discovered evidence, the requested vacater? I mean, if the trial court, state trial court said that in the order, surely the board would have substantial evidence if it chose to accept that as the basis, right? I think that would seem to be within the board's discretion. Right. And maybe your argument is, if the board rejected that, we would then have to have a discussion about whether that rejection and whatever the reasons it gave, accorded with the standard of review that we've got. But it would certainly be within the board's authority to accept a clear vacater order as providing the real reasons behind the vacater. I mean, with the qualification that the board doesn't have to scrutinize the statute under which the conviction was vacated to consider all possible scenarios where it might apply and to sort of define what the court was thinking in doing that. And the fact that there was, I mean, in the hypothetical instance, the absence of any justification for granting the motion or for seeking relief suggests it provides at least circumstantial evidence that the conviction was not vacated for substantive purpose. Including the timing and other factors that are sort of outside of the board. The board can properly consider the timing of the vacater as well as the effect that it would have on the petitioner's ability to pursue relief. All right, Mr. Needle. Before I let you go, Judge Keenan, do you have anything else? No, thank you. Thank you very much. Thank you. Mr. Wintergrad. Thank you again, Your Honors. In response to Judge Keenan's question, we know that Hewitt applies beyond the criminal context because the court itself cited a hypothetical statute involving a stimulus provision. So we know the Supreme Court itself believed that its decision would apply outside the criminal context. But if we read the line that Judge Keenan quoted us, that it is void ab initio and has no prospective effect, that would effectively overrule the 922G case, whatever the name of it is, it says a subsequently vacated conviction can form the basis of a previously imposed 922G conviction, which means that it wasn't void ab initio, that it had prospective effect, even though it was subsequently vacated. So I take the language there to be a reference to this present perfect question of whether it is at present a sentence has been imposed. And in that sense, the court is right. You have to read it a little bit in context. If you take that one sentence out of context, it reads out footnote six and sort of suggests to us that there's a different holding than what we've got. So I think if we're concerned about verb tense in this case, the statute to look at is not the definition of conviction, but the ground of inadmissibility, AUSC 1182A2A1. And it says, it refers to any alien convicted of a controlled substance offense. The challenge is that doesn't really answer the question of whether convicted in that instance is a status question or a historical fact question. Sure, I would point your honors to your 2023 decision in Sela versus Garland, 75F4355. That case involved a provision that referred to any alien granted asylum. And this court held that in that sense, granted asylum referred, granted was used as an adjective, not as a past tense verb. So I think the analysis of that case tracks onto this case as well. And in doing that, what you're saying is convicted in this instance. It's an adjective. Is an adjective describing alien. Correct. Right. And therefore the second move you make in that argument is therefore it is, why does that help us identify that it's a status question, not a historical fact question? Because as an adjective, it's historically true that the alien was in the past convicted of X, right? But it's also true, right? As a historical fact, that conviction has been vacated. But as a historical fact, they were once convicted, right? As a factual matter. I'm not saying it's the best reading, but it's a reading, right? So I guess, why does the adjective help between these two? When a past participle is used as an adjective, it is used to describe a present state of being. That is what the court found in Sela. That's my grammatical understanding. And if you also look at the rest of 1182, where it refers to an alien convicted of, or who admits having committed, or who admits committing X, admits is also in the present tense. So I think Congress was clearly referring to aliens are presently convicted. But why don't we think those is like slightly, I mean, why do they use the convicted, and then they switch to admits? Because both, one is a adjective describing a present tense of being, present state of being. The others are present tense verbs. I think the point is, at the time of adjudication, the person has to either be convicted or admit having committed the crime. If I could just quickly move on to return to your question about stare decisis and loper bright. If loper bright means what the government says it means, it would mean that Fan itself would preclude the board from ever overruling matter of Pickering. That was a concern that Judge Wynn noted in Osirumba. Now, I think the only way it could do that is if the board were to find that it couldn't be reconciled with Hewitt, because of course, Supreme Court precedent is supreme. So I, and finally, I would just like to float a- Arguably, if we disagreed with that, if we wrote an opinion that says, Hewitt is not inconsistent with Fan and Pickering, presumably the board would be bound by that too. Yes, the board would be bound by that. But my point is just, what is the best way to read loper bright? And if you read loper bright, the way that the government reads it, it means that any time a circuit court deferred under step two of Chevron to an agency position, that means the agency's position, the agency could never reconsider its position. It would be bound by a circuit court decision, finding that its prior interpretation was permissible, even if the court didn't think it was the best reading, and even if the agency itself does not subsequently think it's the best reading. All right, thank you very much, Mr. Wynn. Thank you, Your Honors. I want to thank both counsel for their fine arguments in this interesting, grammatically intense case. We'll come back and greet you, come down and greet you, and then adjourn for the day. This honorable court has adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Albert Diaz, Julius N. Richardson, Barbara Milano Keenan